IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASPESTOS PRODUCTS          :   CONSOLIDATED UNDER MDL 875
LIABILITY LITIGATION (No. VI) :
                                  :
VARIOUS PLAINTIFFS                :
                                  :
                          FILED   :
     v.                           :
                                  :   Cases wherein Plaintiff is
                                  :   Represented by Cascino
                          MICHAEL E. RUNZ, Clerk   Vaughan Law Offices, listed
VARIOUS DEFENDANTS        By_____Dep. Clerk   in the attached exhibits
                                  :
                                  :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    NOVEMBER 14, 2011

        Before the Court are various Defendants' Motions to

Dismiss in numerous cases that are part of MDL 875, the

consolidated asbestos products liability multidistrict litigation

pending in the United States District Court for the Eastern

District of Pennsylvania.


I.   **BACKGROUND**

        Defendants' Motions to Dismiss were filed in a group of

cases transferred to the Eastern District of Pennsylvania from

the Indiana, Illinois, and Wisconsin, in which Plaintiffs are

represented by Cascino Vaughan Law Offices ("Cascino Vaughan").

The cases in which Cascino Vaughan represent plaintiffs account

1

for approximately 2,000 cases in MDL 875, the second largest land-based group of cases to remain in the litigation, which once contained more than 150,000 plaintiffs and in excess of eight million claims.

On May 4, 2009, approximately five thousand (5,000) Cascino Vaughan cases were referred to the Honorable Lowell A. Reed for mediation and settlement.  Three thousand (3,000) cases were resolved or dismissed during that process.  On April 18, 2011, anticipating the retirement of Judge Reed, the remaining cases were referred to the Honorable David R. Strawbridge, United States Magistrate Judge, to "conduct pretrial procedures, supervision of discovery, settlement conferences and preparation for trial." (See, e.g., 08-89441, doc. no. 23). Consistent with the order of referral, Judge Strawbridge entered a scheduling order with respect to two hundred (200) cases on July 15, 2011 with the expectation that the cases would be put on scheduling orders in groups of two hundred (200) on a monthly basis.

The deadlines relevant to the motions at issue are as follows:[1]

> 1.    Defendants shall file any motions to dismiss based
>       upon noncompliance with Administrative Order No.
>       12 by:                          July 29, 2011
>
> 2.    Plaintiffs shall respond to any such motions to

---

[1] See Amended Case Management and Scheduling Order for CVLO-1, available at: www.paed.uscourts.gov/mdl875r.asp.

dismiss by:                    August 5, 2011

3.    All medical evidence in plaintiffs' possession, or
      that will be presented to, or relied upon by,
      plaintiffs' expert, including x-rays, pathology,
      and 524(g) bankruptcy trust submissions shall be
      submitted to IKON by:      August 1, 2011

Before the Court are Various Defendants' Motions to
Dismiss Plaintiffs' Claims pursuant to Federal Rule of Civil
Procedure 41(b) for failure to comply with the above deadlines,
based on either Plaintiffs' lack of submissions or allegedly
inadequate submissions.

Each of the bases is discussed below ad seriatim.[2]


## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(b), "[i]f the
plaintiff fails to prosecute or to comply with the rules of a
court order, a defendant may move to dismiss the action or claim
against it."

The Third Circuit has identified certain factors a
court must consider in determining whether to dismiss an action
under Rule 41(b). See, e.g., Capogrosso v. State Farm Ins. Co.,

---

[2]    In a case assigned to an MDL court, matters of
procedure are determined using federal law as interpreted by the
circuit in which the transferee court sits. Kiser v. A.W.
Chesterton Co., 770 F. Supp. 2d 745, 747 n.1 (E.D. Pa. 2011)
(Robreno, J.) (citing Various Plaintiffs v. Various Defendants
("Oil Field Cases"), 673 F. Supp. 2d 358, 363 (E.D. Pa. 2009)
(Robreno, J.)).

2010 WL 3404974 at *15 (D. N.J. 2010) (citing Hoxworth v.
Blinder, Robinson & Co., 980 F.2d 912, 919 (3d Cir. 1992)). In
assessing the propriety of such an action, a court must balance
the following factors:

> (1) the extent of the party's personal
> responsibility; (2) the prejudice to the adversary
> caused by the failure to meet scheduling orders and
> respond to discovery; (3) a history of dilatoriness;
> (4) whether the conduct of the party or the attorney
> was willful or in bad faith; (5) the effectiveness of
> sanctions other than dismissal, which entails an
> analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense.

Id. (quoting Azkour v. Aria, No. 08-3133, 2009 U.S. App.
LEXIS 10887, at *4-5 (3d Cir. May 21, 2009); Poulis v. State Farm
Fire & Cas. Co., 747 F.2d 863, 867 (3d Cir. 1984)). Although all
of the above factors should be considered, there is no "magic
formula." See Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008).
In fact, "where a litigant wilfully refuses to prosecute his case
or effectively makes it impossible to proceed," a District Court
need not even consider the Poulis factors at all, but rather is
left with "little recourse other than dismissal." Ware v. Rodale
Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).

It is widely recognized that District Court judges
"must have authority to manage their dockets, especially during
massive litigation" such as multidistrict litigation. In re
Fannie Mae Sec. Litig., 552 F.3d 814, 822-23 (D.C. Cir. 2009)
(upholding a district court's imposition of sanctions on a party

4

when the party violated a scheduling order and "dragged its feet until the eleventh hour"; and noting that overturning the district court's decision could undermine "the authority of district courts to enforce the deadlines they impose.").

Additionally, "administering cases in multidistrict litigation is different from administering cases on a routine docket." In re Phenylpropanolamine (PPA) Prod.s Liab. Litig., 460 F.3d 1217, 1229 (9th Cir. 2009). The Court of Appeals for the Ninth Circuit has discussed the importance of complying with case management orders in such litigation as follows:

> multidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits.

Id. at 1232. And yet, regardless of how massive or complex the litigation is, success in administering the case by the Court cannot be measured solely in terms of the number of cases settled, or claims dismissed or adjudicated. Each party to the litigation is not just a number. Rather, each is entitled to a full and fair day in court as to the merits of its claims and defenses. How to reconcile the need for efficiency in the administration of the case without compromising a party's right to a full and fair hearing remains the utmost goal of the Court in this litigation.

With these principles in mind, the Court turns to the merits of the motions.

## III. DISCUSSION

A.  <u>Motions to Dismiss for Failure to Submit Any X-Rays to the IKON Depository</u>

Defendants filed a Motion to Dismiss applicable to thirty-eight (38) cases, in which no x-ray submission has been made to the IKON Depository, pursuant to Judge Strawbridge's Scheduling Order.[3]  Defendants aver that, "these plaintiffs have placed B read reports in the IKON repository, but not the x-rays relied upon by plaintiffs' experts to generate the B reads." (<u>See, e.g.</u>, Case No. 08-91650, Def.'s Mot., doc. no. 10, at 2).

As grounds for dismissal of the cases, Defendants focus on the prejudice caused to them by the failure to meet the deadline as well as the history of dilatoriness of plaintiffs' counsel, and aver that there is no alternative appropriate sanction. <u>Poulis</u>, 747 F.2d at 868.

Plaintiffs' responses can be broken down into the following four (4) categories:

---

[3]    The IKON Depository is a central database (maintained by IKON Legal Document Services) to which Plaintiffs are required to submit their medical records and other personal information. Defendants obtain such records from the database, as well.  IKON provides defense counsel with copies of the relevant records at counsel's expense.

1.  In two cases, Plaintiffs aver that x-rays have been submitted.

2.  In twenty two (22) cases, Plaintiffs have agreed to voluntarily dismiss the cases.

3.  In three cases, Plaintiffs aver that the x-rays are now in possession of Plaintiffs' counsel and the failure to submit them to IKON was an oversight.

4.  In fourteen (14) cases, Plaintiffs ask for a thirty (30) day extension to comply with the scheduling order.

As to category 1, Defendants' motions will be denied, as Plaintiffs' averment that the deadline has been satisfied has not been countered by Defendant.

As to category 2, Plaintiffs' motions to voluntarily dismiss the cases will be granted.

As to category 3, Defendants' Motions to Dismiss will be granted because Plaintiffs failed to timely submit x-rays, even though such x-rays are currently in Plaintiffs' Counsels' possession.

As to category 4, the Court declines to extend the deadlines set forth in the scheduling order.  Plaintiffs aver that a thirty (30) day extension is appropriate because it will not prejudice Defendants and not cause a delay for any other deadlines. (Case No. 08-91650, Pl.'s Mot. for Extension of Time, doc. no. 14, at 3). Plaintiffs argue that a dismissal would cause "extreme prejudice" to "Plaintiffs who have waiting [sic] years

for their day to be heard in Court." (Id.) Despite these
protestations, the Court finds that Plaintiffs have offered no
explanation to support a finding of "good cause" for modification
of the scheduling order. See Joseph v. Hess Oil Virgin Islands
Corp., 651 F.3d 348, 352 n.6 (3d Cir. 2011) (quoting Fed. R. Civ.
P. 16(b)(4)) ("a scheduling order 'may be modified **only for good
cause** and with the judge's consent'") (emphasis added).  Missing
in Plaintiffs' averments is any explanation why the Order was not
complied with, or why Plaintiffs did not seek an extension of
time to comply prior to the expiration of the deadlines.  It is
not clear that Plaintiffs are even available now to prosecute
these cases or that counsel has made any attempt to schedule a
medical appointment for each plaintiff.

          As stated above, with respect to prejudice to
Plaintiffs, this Court is committed to giving each party to this
litigation a full and fair day in Court.  To accomplish this
objective, Scheduling Orders are issued in each case as a roadmap
to reaching the merits of a claim in a crowded docket.  However,
if Plaintiffs' counsel fails to comply with the Court's roadmap
without justification, as in this case, not only will the Court
not reach the merits in a timely fashion, but the progress of
other cases waiting in the queue will also be delayed. See Capek
v. Mendelson, 143 F.R.D. 97, 99-100 (E.D. Pa. 1992) (Robreno, J.)
(noting that the "road map will not work if the drivers are

unwilling to look at the sign posts.  Nor will judicial
management and technique alone work sorcery on otherwise
intransigent litigants and their counsel.")  Therefore,
Plaintiffs' request for additional time will be denied, and
Defendants' Motion to Dismiss for failure to timely submit x-rays
will be granted.

### B.    Motions to Dismiss for N & M Submissions

In nine (9) cases, Defendants have moved to dismiss the
cases based on the submission of x-rays performed by the now-
defunct company N & M, Inc. ("N & M").  Defendants aver that,
because the owners of N & M have asserted their Fifth Amendment
privilege against self-incrimination when questioned about the
practices of N & M, the x-rays "cannot be authenticated or
verified as taken in accordance with applicable regulatory and
statutory requirements." (Case no. 08-92187, Def.'s Mot., doc.
no. 18, at 5).

Plaintiffs respond that a motion to dismiss "is not a
proper method upon which to contest the sufficiency of
Plaintiffs' evidence," and that Plaintiffs complied with the
scheduling order by submitting timely x-rays. (See, e.g., Case
no. 08-92187, Pl.'s Resp., doc. no. 20, at 2). Alternatively,
Plaintiffs argue that the x-rays are medically sufficient, as the
B-readers noted the x-ray's quality as a "1 or 2" film quality.

(Id.) Plaintiffs also note that two specific cases do not fit squarely into Defendants' umbrella of strictly N & M cases. (Id. at 3.) Finally, Plaintiffs agree to submit additional x-ray submissions if the scheduling order is amended.  (Id. at 4.)

Administrative Order No. 12 requires the submission of a diagnostic report for each plaintiff.[4]  The report requires the identification and particulars of information concerning the plaintiff and the nature of the illness claimed.  The purpose of the report is to aid the Court in determining whether the plaintiff has a legally cognizable claim.  These types of requirements are increasingly common in mass tort litigation.[5]

In these cases, although the Plaintiffs submitted reports, because the physicians who authored the reports are unavailable (having invoked their rights under the Fifth Amendment) to authenticate them, the reports are insufficient to satisfy Administrative Order No. 12.  In the absence of authentication, the reports are not valid.  In the absence of valid reports under Administrative Order No. 12, these cases must

---

[4]     Administrative Order No. 12 is available at http://www.paed.uscourts.gov/documents/MDL/MDL875/adord12.pdf.

[5]     See, e.g., In re Silica Prod.s Liab. Litig., 398 F. Supp. 2d 563, 575-75 & n.18 (S.D. Tex. 2005) (citing Order No. 4, which required each plaintiff to create a specific Fact Sheet); Lore v. Lone Pine Corp., No. L-03306-85, 1986 N.J. Super. LEXIS 1626 (N.J. Sup. Ct. Nov. 18, 1986) (requiring plaintiffs in mass tort litigation to provide, inter alia, "[r]eports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation").

be dismissed under Rule 41(b).  That the practices of N & M have
been questioned should not come as a surprise to learned counsel,
experienced in asbestos litigation, who should have recognized
these deficiencies and should have moved to obtain <u>new</u> reports
long ago.[6]

     C.   <u>Motions to Dismiss for Failure to Comply with
Administrative Order No. 12</u>

     1.   <u>No Administrative Order No. 12 Submission</u>

In six (6) cases, Defendants have filed motions to

_____

[6]   A thorough and persuasive discussion about the
practices of N & M can be found in Judge Jack's decision in
another multidistrict litigation case. In <u>In re Silica Products
Liability Litigation</u>, 398 F. Supp. 2d 563, 581-620 (S.D. Tex.
2005), N & M's practices in diagnosing silicosis were at issue.
Judge Jack explained N & M's processes of taking x-rays as
follows:

> N & M's x-ray equipment was operated by a technician
> and was periodically inspected by the appropriate state
> certification board. Inspectors in both Mississippi and
> Texas have issued violations to N & M for failing to
> comply with state standards. In addition, N & M did not
> have a policy of having a medical professional
> supervise the x-rays and the equipment during the
> screens.  Moreover, no medical professional actually
> ordered the x-rays; Mr. Foster testified that he viewed
> the client as "requesting" the x-ray for him— or
> herself.  This is despite the fact that, according to
> Dr. Ballard (an RTS B-reader), in normal medical
> practice, a doctor orders an x-ray before it is
> performed on a patient.

<u>Id.</u> at 598-99 (internal citations to the record omitted).

dismiss based on the Plaintiffs' failure to submit any
Administrative Order No. 12 ("AO 12") report.  One of these cases
has since been transferred to the bankruptcy-only docket, and one
of the cases was previously closed.

As to the remaining four (4) cases, Plaintiffs state
that the deadline to submit AO 12 submissions should be extended,
as this was a case of "excusable neglect."  Plaintiffs state that
they submitted approximately seventeen hundred (1,700) AO 12
submissions and simply missed six.  Plaintiffs state that "[w]ith
so many cases, it is virtually impossible to get 100%
compliance."

The Court categorically rejects the proposition that,
because counsel chose to represent a large number of plaintiffs
in these cases, counsel is entitled to a margin of error in
complying with the Court's order.  The entry of appearance by
counsel constitutes a representation that counsel is ready,
willing and able to represent each party for whom counsel has
entered an appearance fully and adequately.  Each plaintiff, and
the Court, are entitled to no less. If counsel's resources do not
permit adequate representation in all cases before the Court,
such that counsel is unable to comply fully with the Court's
orders, counsel may need to either withdraw from representation
of some of the plaintiffs or seek additional help to handle the
cases properly and adequately.

The four (4) remaining active cases in which Plaintiffs have failed to file any AO 12 submissions, and in which counsel have failed to advance any legitimate ground why counsel was unable to comply with the Court's order, will be dismissed with prejudice.

### 2. Adequacy of Administrative Order No. 12 Submission

#### a. Plaintiffs' failure to comply with AO 12 due to lack of exposure history

In nineteen (19) cases, Defendants aver that there is no real "exposure history" in Plaintiffs' AO 12 submissions. Defendants aver that generally accepted medical standards call for information regarding "duration, intensity, time of onset, and setting" of exposure to asbestos. (Case No. 08-92187, Def.'s Mot., doc. no. 12, at 3).

Plaintiffs respond that each diagnosing physician in the nineteen (19) cases passes Daubert muster, and that all of them are "highly experienced professionals with strong qualifications." (08-92187, doc. no. 26, at 3.) However, Plaintiffs' contention that their experts pass Daubert muster is irrelevant to whether the AO 12 submissions themselves fit the requirements outlined in AO 12.

In AO 12, the Court notes that "[w]here screenings have

13

been conducted . . . utilizing standards and protocols established by the American Thoracic Society (ATC), the Association of Occupational and Environmental Clinics (AOEC), and other accredited health organizations, there is a larger probability of adequacy for the reliability foundation necessary for admissibility." (01-MD-875, doc. no. 6645). The Order further states that each Plaintiff "shall submit to the court a copy of the medical diagnosis report or opinion upon which the plaintiff now relies for the prosecution of the claims as if to withstand a dispositive motion." (Id.). This language indicates that: (1) a 41(b) motion based on an AO 12 submission is the appropriate time to consider the admissibility of medical screenings, and (2) the reliability of screenings in large part has to do with whether such screenings were conducted according to medically accepted standards.

Relatedly, it is important to note that AOEC has provided guidelines to be followed during an asbestos screening. Specifically, the AOEC has said: "[a]n appropriate screening program for asbestos-related lung diseases includes properly chosen and interpreted chest films, reviewed within one week of screening; **a complete exposure history**; symptom review; standardized spirometry; and physical examination." (See The Assoc. of Occupational & Envtl. Clinics Policy on Asbestos Screening for Legal Action,

14

http://www.aoec.org/asbestos-screen.htm (April, 2000), Def.'s Ex.
F (emphasis added)).

Furthermore, the American Thoracic Society adopted an
official statement that emphasizes that: "[i]t is essential to
take a comprehensive occupational and environmental
history when asbestos-related disease is suspected. The
occupational history should emphasize occupational and
environmental opportunities for exposure that occurred about
15 years and more before presentation." See Diagnosis & Initial
Management of Nonmalignant Diseases Related to Asbestos, 170
AMER. J. RESPIRATORY & CRITICAL CARE MED. 695 (2004),
http://www.thoracic.org/statements/resources/eoh/asbestos.pdf.

Based on the language in AO 12 that emphasizes that
plaintiffs should submit medical diagnosis or opinions based on
medically accepted principles and practices, and based on
statements from reputable medical organizations that require
occupational and environmental exposure history when screening
for asbestos-related diseases, the Court will grant Defendants'
Motions to Dismiss in the nineteen (19) cases in which
Plaintiffs' AO 12 submissions lack exposure history.

b.    Plaintiffs' failure to show any
asbestos-related medical impairment

AO 12 provides that "[e]ach plaintiff asserting a claim

15

based upon an alleged <u>non-malignant</u> injury or condition shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion." (01-MD-875, doc. no. 6645). Defendants move to dismiss certain of these cases on the basis that Plaintiffs' AO 12 submissions show only pleural plaques and pleural thickening, but no "asbestos-related disease" or "cognizable asbestos-related injury."

Plaintiffs respond that "AO 12 does not require the condition be asbestos-related." Alternatively, Plaintiffs respond that, under Illinois law, which is applicable to the instant claims, "plaintiffs can seek compensation for increased risk of future injury." <u>Dillon v. Evanston Hosp.</u>, 199 Ill. 2d 483, 504 (2002). Plaintiffs are wrong on both counts.

Plaintiffs' first argument is a literal, but unreasonable, interpretation of the language of AO 12.  The purpose of an AO 12 submission is to present evidence that the plaintiff is afflicted with a disease.  Therefore, to satisfy AO 12, the medical evidence presented by Plaintiff must contain a diagnosis of a symptomatic asbestos-related disease.

Plaintiffs' second argument, that pleural plaques and pleural thickening are compensable injuries under Illinois law,[7]

---

[7]     The two cases originating in Indiana have both been previously dismissed (Bennett 10-68968 and Wallman 08-88587). Therefore, the legal question as to those cases is moot.

requires more extensive treatment.

Unfortunately, there is no Supreme Court of Illinois precedent with respect to whether pleural plaques and pleural thickening are compensable injuries under Illinois law. The Supreme Court of Illinois has never squarely addressed this issue.  Under these circumstances, this Court must predict the future course of Illinois law. See, e.g., Kiser v. A.W. Chesterton Co., 770 F. Supp. 2d 745, 750 (E.D. Pa. 2011) (Robreno, J.).[8] In doing so, the Court looks to relevant state precedents; dicta; scholarly works; and other reliable sources. Charles Shaid of Pennsylvania, Inc. v. George Hyman Const. Co., 947 F. Supp. 844, 852 (E.D. Pa. 1996) (Robreno, J.) (citations omitted). In predicting the future course of state common law, "'a federal court must be sensitive to the doctrinal trends of the state whose law it applies.'" Id. (quoting Clark v. Modern Group Ltd., 9 F.3d 321, 327 (3d Cir. 1993)). The Court will

_____

Nonetheless, it is clear that, under Indiana law, claims of asymptomatic pleural plaques and pleural thickening are not actionable.  AlliedSignal, Inc. v. Ott, 785 N.E.2d 1068, 1075 (Ind. 2003); Jurich v. John Crane, Inc., 824 N.E.2d 777, 782-83 (Ind. App. 2005).

[8]    In the context of a multi-district litigation, the Court in diversity defers to the transferor court on unsettled issues of state law. See Dalton v. 3M Co., 10-64604, doc. no. 204 (July 29, 2011 E.D. Pa.) (Robreno, J.). However, in this case, given that the unsettled issue of state law arises in the context of a procedural question, i.e., the adequacy of the AO 12 submission, the Court will follow the Erie path of predicting the future course of substantive state law.

consider these elements as follows.

### (1) Supreme Court of Illinois Precedent

First, Plaintiffs are correct that, under <u>Dillon</u>, 771 N.E.2d 357, the Supreme Court of Illinois found that "[a] plaintiff can obtain compensation for a future injury that is not reasonably certain to occur." <u>Id</u>. at 370. In <u>Dillon</u>, the court quoted with approval from a jury instruction that as to future harm, "you must find a breach of duty that was a substantial factor in causing a **present injury** which has resulted in an increased risk of future harm." <u>Dillon</u>, 771 N.E.2d at 372 (emphasis added) (quoting Connecticut Civil Jury Instruction No. 2-40(c)). In other words, a plaintiff must already have a present injury in order to recover for an increased risk of future harm. This point was restated by the Illinois Supreme Court in <u>Williams v. Manchester</u>, 888 N.E.2d 1 (Ill. 2008), in which it made clear that, under <u>Dillon</u>, while the increased risk of future harm is an element of damages that can be recovered for a present injury, that risk itself is not a compensable injury. <u>Id.</u> at 14.

### (2) Local Practices

Second, local practices indicate that pleural plaques and pleural thickening, without the manifestation of physical symptoms, are not considered by Illinois courts to constitute present injuries.

For example, in at least two counties in Illinois,

plaintiffs with no impairment are automatically placed on an inactive docket (in Cook County) or an Asbestos Deferred Registry (in Madison County), and only if they develop physical symptoms are their cases returned to the active docket. (See Case No. 10-68114, Def.'s Mot., doc. no. 15, at 8.) One purpose of this practice is to give priority to plaintiffs who do have physical impairments, ahead of cases of plaintiffs without impairments, which otherwise would consume many judicial resources. See, e.g., Helen E. Freedman, Selected Issues in Asbestos Litigation, 37 Sw. U. L. REV. 511, 513-14 (2008); Peter H. Schuck, The Worst Should Go First: Deferral Registries in Asbestos Litig., 15 HARV. J.L. & PUB. POL'Y 541, 542-43 (1992). This deferral system was not unilaterally imposed by the Court but was developed jointly by the plaintiffs bar and the defense bar in Illinois. See Freedman, 37 Sw. U. L. REV. at 513-14.

Additionally, the Order Establishing the Asbestos Deferred Registry in Madison County specifically recognizes that:

> [a] substantial number of asbestos personal injury claims filed in Madison County involved plaintiffs who claim exposure to asbestos, but who are not now physically impaired.  In some of these cases, an asbestos-related condition resulting in physical impairment of the plaintiff may develop, but in many cases, the disease process will not progress to physical impairment.

Order at ¶ 4.[9] Therefore, many of the instant cases, had they

---

[9]     The Order is available at http://www.co.madison.il.us/circuitclerk/PDF/AsbestosDeferredRegi

remained in the Illinois state court system, would not have been able to proceed to the merits unless and until Plaintiff developed symptoms of asbestos exposure beyond pleural plaques and pleural thickening.

### (3) Emerging Doctrinal Trends

The emerging trend in asbestos litigation around the country is not helpful to Plaintiffs. All signs in this mature litigation point to the treatment of pleural plaques and pleural thickening as non-compensable, unless and until plaintiffs exhibit physical impairments or malignancies. See, e.g., AlliedSignal, Inc. v. Ott, 785 N.E.2d 1068, 1075 (Ind. 2003) (under Indiana law, claims of asymptomatic pleural plaques and pleural thickening are not actionable); Simmons v. Pacor, Inc., 674 A.2d 232, 237 (Pa. 1996) ("asymptomatic pleural thickening is not a compensable injury"); Giffear v. Johns-Manville Corp., 632 A.2d 880, 884 (Pa. Super. 1993) ("pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury and is therefore not a cognizable claim"); Owens-Illinois v. Armstrong, 591 A.2d 544, 560-561 (Md. App. 1991), aff'd in part, rev'd in part on other grounds, 604 A.2d 47 (Md. 1992) (pleural plaques and pleural thickening do not cause detriment and are not legally compensable injuries); In re Hawaii Federal Asbestos Cases, 734 F. Supp. 1563, 1567 (D. Hawaii

---

stry.pdf

1990) ("the mere presence of asbestos fibers, pleural thickening
or pleural plaques in the lung unaccompanied by an objectively
verifiable functional impairment is not" compensable).

      Based on this analysis of Illinois law and practice,
and the emerging trends in other jurisdictions, the Court
predicts that the Supreme Court of Illinois would find that
pleural plaques and pleural thickening are not cognizable
injuries under Illinois law.  Therefore, Defendants' motion will
be granted and, where Plaintiffs have failed to allege in their
AO 12 submissions cognizable claims based upon asbestos-related
diseases or impairments, their cases will be dismissed without
prejudice.

## IV.  CONCLUSION

      For the reasons set forth above, Defendants' Motions to
Dismiss are granted in part and denied in part, and Plaintiffs'
Motions for Extensions of Time are denied.  An appropriate order
follows.